IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

SHELIA H. HICKS                                                     PLAINTIFF

v.             Civil No. 11-3090

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                        DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Shelia Hicks, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**      **Procedural Background:**

The Plaintiff filed her applications for SSI and DIB on June 1, 2009, alleging an onset date of October 28, 2008, due to fibromyalgia, bilateral carpal tunnel syndrome, malignant melanoma on the legs, bronchitis, depression, and anxiety. Tr. 113-124, 165, 180-181, 197-199, 201, 202, 208-209, 211, 222-230, 233-239. The Commissioner denied Plaintiff's application initially and on reconsideration. Tr. 63-71. An administrative hearing was held on September 16, 2010. Tr. 25-48. Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 48 years old and held the equivalent of a high school education. Tr. 27, 170. Plaintiff had past relevant work ("PRW") experience as a cashier, sales clerk, prep cook, certified nursing assistant, cook, waitress, and laminator with a boat manufacturing company. Tr. 166, 172-179, 218-222.

On December 20, 2010, the ALJ found Plaintiff's fibromyalgia, bilateral carpal tunnel syndrome, bronchitis, depression, and anxiety to be severe, but concluded they did not meet or medically equal one

of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 11-13. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she can only occasionally climb, balance, crawl, kneel, stoop, and crouch. The claimant can frequently finger and handle. The claimant can do work where the complexity of the tasks is learned and performed by rote with few variables and little judgment required and the supervision is simple, direct, and concrete.

Tr. 13. With the assistance of a vocational expert, the ALJ found Plaintiff could perform work as a small products assembler, small production machine operator, and credit interviewer. Tr. 18-19.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on August 2, 2011. Tr. 1-4. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 7, 8.

The Court has reviewed the entire record in this case, including the transcript of the administrative hearing, Plaintiff's medical records, the ALJ's opinion, and the appeal briefs filed by the parties. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have

supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

3

### III. Discussion:

Plaintiff contends that the ALJ erred in concluding that she was not disabled because: 1) the RFC is not supported by substantial evidence as it dismisses the assessment of Dr. Brownfield on bases that are completely erroneous and attributes abilities to Plaintiff that have no support in the record; 2) the ALJ made his RFC determination without the benefit of a clearly needed consultative psychological evaluation; 3) the ALJ failed to provide specific substantial reasons for finding Plaintiff not credible and failed to follow the requirements of *Polaski v. Heckler*; and, 4) the vocational expert's testimony was based on an inaccurate hypothetical question.

#### A. RFC Assessment:

Plaintiff alleges that the ALJ's RFC assessment is not supported by substantial evidence because it dismisses the assessment of Dr. Brownfield and attributes abilities to Plaintiff that have no support in the record. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

We will begin with an analysis of the medical evidence. The record reveals that Plaintiff had a history of skin cancers; bronchitis; headaches; numbness and pain in her hands, feet, neck, and back; possible restless leg syndrome; and, depression/anxiety. Tr. 275-279, 285-288, 290, 377-381, 384, 385. Dr. Bruce Robbins noted that Plaintiff's headaches were partially responsive to Atenolol, so he prescribed Cozaar to be taken with the Atenolol. *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."). He also voiced his opinion that Plaintiff's headache would likely decrease significantly if she could get her systolic pressure down to 120. Tr. 275. Further, although Dr. Robbins recommended physical therapy to treat her lower back symptoms, notes indicate that Plaintiff deferred this treatment. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.").

MRI scans of Plaintiff's brain, cervical spine, and lumbosacral spine were performed in November and December 2005, revealing no significant abnormalities. Tr. 281-83. Nerve conduction studies demonstrated some slight increase in the sensory distal latencies which were possible indications of significant compression neuropathy or possible sensory neuropathy. Tr. 284.

Medical evidence during the relevant time period reveals that Plaintiff visited the emergency room in August 2009 with complaints of "all over body pain." Tr. 317-341. She indicated that Tramadol was only working for approximately one hour. Tr. 331. She was diagnosed with myalgia and prescribed Percodan and Hydrocodone. Tr. 319.

Plaintiff also made several visits to Dr. Shawn Bogle at the Ahrens Clinic between March 10, 2008, and August 31, 2010, receiving treatment for anxiety attacks, generalized anxiety and depression, sciatica, widespread pain (elbows, wrists, knees, ankles, right hip, and right lower extremity), and difficulty sleeping. Tr. 341, 342, 373, 374, 376. 373. She acknowledged some relief with Tramadol, and admitted significant relief with steroids. *See Brown*, 390 F.3d at 540. Dr. Bogle diagnosed Plaintiff

5

with an upper respiratory infection and administered a Celestone injection. He also prescribed Elavil, Diclofenac, Neurontin, and antibiotics. In February 2010, Plaintiff stated that she had experienced memory loss with the Neurontin so she had discontinued it. Tr. 373. Dr. Bogle advised her to restart the Neurontin and to continue the Elavil. In March 2010, Plaintiff's Neurontin dosage was increased, due to continued reports of pain. In April, she was enrolled in Pfizers prescription assistance plan. Tr. 370. On May 5, 2010, Plaintiff appears to have reported minimal improvement with the increased dosage of Neurontin. Tr. 370. The treatment record is difficult to discern, but it looks as though Dr. Bogle prescribed Tramadol. In July, Plaintiff again reported that the Neurontin was not helping, stating that an Ibuprofen and Tramadol combination provided more relief. Tr. 369, 371. She also complained of difficulty performing her daily activities. Dr. Bogle gave her Savella samples and a prescription for Tramadol. Tr. 369.

In early August, Plaintiff reported that the Savella worked wonderfully. Tr. 369, 372. She stated that she had more pain relief now that she had ever experienced. However, she was concerned that she might not be able to afford this medication. Later that month, Plaintiff returned to Dr. Bogle's office with complaints of right hip pain radiating down the right, lateral side of her leg. Tr. 368, 369. She stated that it hurt when she extended her leg down straight and tried to bend over. Dr. Bogle noted significant tenderness to palpation in the right buttocks area over the sciatic nerve outlet. He noted that this did reproduce some of the shooting pains down her leg that Plaintiff reported. Dr. Bogle diagnosed Plaintiff with right leg sciatica, administered a Celestone injection, and prescribed Naproxen. This was, however, her last treatment note.

On August 24, 2009, Dr. Shannon Brownfield performed a physical examination of Plaintiff. Tr. 291-295. Dr. Brownfield recited Plaintiff's history of fibromyalgia and chronic pain, melanoma, neuropathy, and possible carpal tunnel syndrome. Tr. 291. His physical examination found a normal range of motion in the spine, no evidence muscle spasm, was negative for muscle weakness or atrophy,

and found her neurological reflexes to be intact. Tr. 293-94. He did note multiple trigger points accompanied by pain, but indicated that she was able to grip without limitations, stand without an assistive device, walk on her heel and toes, pick up a coin, and rise from a squatting position. Dr. Brownfield diagnosed her with fibromyalgia and a history of carpal tunnel syndrome. Tr. 295. He assessed her with globally severe limitations with regard to staying in positions for prolonged periods of time, standing, and lifting. Tr. 295. He did not, however, explain what he meant by globally severe limitations.

On August 26, 2009, Dr. Jerry Mann, a non-examining state agency physician compiled a physical RFC assessment. Tr. 299-306. After reviewing Plaintiff's medical records, he concluded Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, and sit/stand/walk for 6 of 8 hours in a workday. He also opined that Plaintiff could only occasionally climb, balance, stoop, kneel, crouch, and crawl. Tr. 301. This assessment was affirmed by Dr. Bill Payne on December 2, 2009. Tr. 343-346.

The ALJ concluded that Plaintiff could perform sedentary work involving occasionally climbing, balancing, crawling, kneeling, stooping, and crouching and frequent handling and fingering. After reviewing the evidence of record, we agree. While we note that Plaintiff suffered from pain, the standard of evaluation is not whether plaintiff experiences pain, but if the pain alleged is intense enough to cause functional limitations. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents him or her from performing any kind of work). And here, the evidence reveals that Plaintiff's pain was responsive to both steroid injections and the medication Savella.[1] *See Brown*, 390 F.3d at 540. And, medical records reveal no range of motion deficits, muscle weakness, muscle atrophy, or other limitations that would

---

[1] We note that Plaintiff did not require a great deal of treatment for her skin cancers or bronchitis during the relevant time period. Therefore, we believe the RFC assessment accounts for all of limitations Plaintiff was likely to encounter.

7

prevent her from performing sedentary work. Accordingly, we find substantial evidence to support the ALJ's RFC determination.

Although there is evidence in the record to indicate that Plaintiff was treated for anxiety and depression by her general doctor, there is no evidence of formal mental health treatment or hospitalizations related to her mental impairments. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment). In fact, the only mental health evidence is a consultative exam conducted by neuropsychologist, Dr. Vann Smith. Tr. 348-356. On April 23, 2010, Plaintiff consulted with Dr. Smith, reporting impaired recall/declarative memory, impaired concentration, impaired attention to sequential detail, work finding impairment, affective lability, sleep disturbance, and executive dysfunction. She also detailed a history of fibromyalgia; chronic airway disease; recurrent, malignant melanoma; and, closed head injuries with Grade II and III concussions. After evaluating Plaintiff and conducting a battery of tests, Dr. Smith diagnosed Plaintiff with cognitive disorder, nonpsychotic, secondary to her general medical conditions. He concluded that her test scores were "consistent with the presence of diffuse organic dysfunction of moderate severity and static velocity." Tr. 351. Dr. Smith then assessed her with a global assessment of functioning score of 35-40.

Dr. Smith also completed a mental RFC assessment, indicating that Plaintiff was unable to meet competitive standards in remembering work-like procedures; maintaining attention for two hour segments; maintaining regular attendance and punctuality within customary, usually strict tolerances; sustaining an ordinary routine without supervision; completing a normal workday or workweek without disruption from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; understanding, remembering, and carrying out detailed

instructions; and, dealing with the stress of workplace environments. He also estimated that she would miss four or more days of work per month.

The ALJ noted, as we do, that there is no objective evidence to support Dr. Smith's findings that Plaintiff had a history of closed head injuries. In fact, an MRI of her brain showed no abnormalities. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). And, aside from Dr. Smith's assessment, there is no evidence to indicate that Plaintiff suffered from residual limitations following these alleged injuries that impacted her ability to perform work-related activities. Further, there is limited evidence to even indicate that Plaintiff's mental impairments necessitated any treatment during the relevant time period.

It is also clear that Dr. Smith did not review any of Plaintiff's medical records prior to rendering his assessment. Instead, he relied on her own reports of symptoms and medical history. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ may give less weight to a medical opinion that is based largely on subjective complaints rather than on objective medical evidence); *Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005) (holding that the record supports ALJ's conclusion that treating physician's diagnosis and impressions were based largely on the Plaintiff's subjective complaints with little objective medical support). Further, Dr. Smith examined Plaintiff on only one occasion. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence).

It is also significant to note that Dr. Smith determined Plaintiff had a full scale IQ of 101, which is indicative of average intelligence, in spite of diagnosing her with cognitive disorder. Generally speaking, a cognitive impairment is characterized by lower than average IQ scores and significant deficiencies in adaptive behavior. As the evidence of record does not support a diagnosis of cognitive disorder, we believe that the ALJ correctly determined that Dr. Smith's assessment was not entitled to

9

significant weight. Because substantial evidence supports the ALJ's conclusion that Plaintiff could perform simple, unskilled work, the RFC determination will be upheld.

### 1. Dr. Brownfield:

Plaintiff contends that the ALJ improperly dismissed Dr. Brownfield's findings that she suffered from globally severe physical limitations. Dr. Brownfield did indicate that Plaintiff would be limited with regard to staying in one position for prolonged periods of time, standing, and lifting. However, as noted previously, he did not define the term "globally severe." The ALJ was of the opinion that Dr. Brownfield's physical findings did not support his ultimate assessment, as Plaintiff had no range of motion limitations, a normal grip strength, the ability to walk on heel and toes, the ability to squat and arise from a squatting position without assistance, and the ability to stand and walk without assistance. In fact, his physical examination yielded nothing aside from tender points, which he also failed to define and describe. Accordingly, we conclude that the ALJ properly discounted his assessment of "globally severe" impairments after finding that it was not supported by the objective evidence in the record and that it contrasted with his own physical findings. *See Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007) (ALJ may credit another medical evaluation over that of treating physician when other assessment is supported by better medical evidence, or where treating physician renders inconsistent opinions); *Ellis v. Barnhart*, 392 F.3d 988, 994-95 (8th Cir. 2005) (medical opinion that applicant is disabled involves issue reserved for Commissioner, and is not entitled to controlling weight).

However, the ALJ determined that Dr. Brownfield's objective findings did support a finding that Plaintiff could perform sedentary work. And, after reviewing the entire record, we agree. While the record does indicate that Plaintiff complained of pain and numbness, MRI's of her brain, cervical spine, and lumbosacral spine revealed no significant abnormalities. Tr. 281-284. *See Forte*, 377 F.3d at 895. Nerve conduction studies revealed only a slight increase in sensory distal latencies. *Id*. And, Plaintiff even reported good pain relief via conservative measures including steroid injections and the medication

Savella. *See Brown*, 390 F.3d at 540. Further, as the ALJ correctly noted, none of Plaintiff's treating doctors assessed Plaintiff with or noted any limitations, as one would expect if a patient's symptoms were as severe as Plaintiff has alleged. *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (none of the claimant's treating physicians opined the claimant was so impaired or disabled that the claimant could not work at any job).

Further, Plaintiff reported the ability to live alone; feed, water, and take her dogs outside; care for her personal hygiene with some difficulty and the use of shower bar; prepare simple meals; perform light housework; wash dishes; do laundry once per week; go outside three times daily to let dogs out; drive, ride in a car; shop in stores for groceries and cleaning supplies once per week for approximately 45 minutes; pay bills; count change; handle a savings account; use a checkbook/money orders; read; watch television; and, spend time with others. Tr. 182-189. On a questionnaire Plaintiff completed for her attorney, she also indicated that she washed dishes, made the bed, watched television/ listened to the radio, talked on the phone, and slept/stayed in bed daily; drove, cooked, cleaned house, did the laundry, paid the bills, and handled finances weekly; visited relatives, talked to neighbors, and went out to eat or to the movies monthly; and, occasionally watched her grandchildren and read. Tr. 217-239. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 669, 671 (8th Cr. 1995) (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Clearly, these are not the type of activities one would expect a disabled person to be able to perform.

### 2. Lack of RFC assessment from treating physician:

Plaintiff also maintains that the ALJ's RFC assessment is flawed because he concluded that none of her treating physicians had noted any limitations, but did not ask them to complete an RFC assessment wherein they could have noted any limitations. Contrary to Plaintiff's argument, the Eighth Circuit Court of Appeals has upheld the Commissioner's RFC assessment in cases where the ALJ did not rely on a treating physician's functional assessment of the claimant's abilities and limitations. *See Page v. Astrue*, 484 F.3d at 1043 (the medical evidence, state agency physician opinions, and claimant's own testimony were sufficient to determine RFC); *Stormo v. Barnhart*, 377 F.3d 801, 807-08 (8th Cir. 2004) (medical evidence, state agency physicians' assessments, and claimant's reported activities of daily living supported RFC finding); *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004) (ALJ's RFC assessment properly relied upon assessments of consultative physicians and a medical expert, which did not conflict with the treating physician's records).

It is common place for a doctor to document all limitations he observes during an examination of his patient. This is generally done regardless of whether or not he is ever asked to complete an RFC assessment. It is simply a part of the documentation physicians are required to keep. Thus, it is permissible for the ALJ to take note of this in his decision. And, we find Plaintiff's argument to be without merit. Substantial evidence supports the ALJ's RFC assessment.

### B. Consultative examination and financial hardship:

Next, Plaintiff contends that the ALJ erred by failing to order a psychological consultative exam. However, the Eighth Circuit has held that an ALJ is not required to order a consultative evaluation of every alleged impairment; he simply has the authority to do so. *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989). The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled.

*Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994); 20 C.F.R. §§ 404.1519a(b) and 416.919a(b) (2006).

After reviewing the record, we find Plaintiff's argument lacks merit. Although she did have a history of treatment for depression and anxiety, Plaintiff failed to seek out formal mental health treatment. We can also find no evidence to indicate that her mental condition required hospitalization or intervention of any type. And, Plaintiff reported the ability to go out to eat and to the movies, shop in stores, visit relatives, and talk to neighbors without difficulty. Accordingly, we conclude that the ALJ had sufficient medical evidence upon which to conclude that Plaintiff's mental impairments were not totally disabling.

Plaintiff also maintains that her failure to obtain mental health treatment should be justified by her financial hardship. A lack of funds may justify a failure to receive medical care. *Osborne v. Barnhart,* 316 F.3d 809, 812 (8th Cir. 2003). However, a lack of funds alone will not excuse a Plaintiff's failure to obtain treatment or follow medical advice. Generally speaking, a lack of evidence that the claimant attempted to find any low cost or no cost medical treatment for her alleged pain and disability is inconsistent with a claim of disabling pain. *Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992). The record before us does indicate that Plaintiff did not have insurance. It also reveals that she was enrolled in a prescription assistance program through at least one drug manufacturer, indicating that she was at least aware of and able to avail herself of some of the services offered to low income and/or indigent patients. The evidence does not, however, indicate that she was ever refused treatment due to her inability to pay or that she sought assistance from low cost or indigent mental health providers. [2] Accordingly, we can not excuse her failure to seek out treatment.

---

[2] Plaintiff contends that she was refused treatment in the emergency room on one occasion. However, upon further questioning, the doctor refused to treat her because she did not feel that fibromyalgia was a condition that required emergent care. There is no evidence to indicate that her indigency was the reason for the doctor's refusal to treat her.

13

### C. Credibility analysis:

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.429. *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007). These factors, which provide as follows, must be analyzed and considered in light of the claimant's subjective complaints of pain: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *See Polaski,* 739 at 1322. The ALJ is not required to methodically discuss each factor. *See Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). If "the ALJ [does] not explicitly discuss each *Polaski* factor in a methodical fashion," but acknowledges and considers those factors before discounting the claimant's subjective complaints of pain, an arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996) (citing *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987)). This is especially true where, as in here, the deficiency had no practical effect on the outcome of the case. *Id*.

In the present case, the ALJ acknowledged his duty to evaluate the intensity, persistence, and limiting effect of Plaintiff's symptoms pursuant to 20 C.F.R. 404.1529 and 416.929 and to determine the extent to which they limited her functioning. He then went on to discuss the medical evidence, Plaintiff's testimony, the testimony of Plaintiff's daughter, and Plaintiff's reports of her daily activities. Although he might not have listed them out neatly, it is clear from the ALJ's opinion that the ALJ discredited Plaintiff for the following reasons: 1) lack of objective medical evidence to support her subjective complaints and 2) her receipt of unemployment benefits during the relevant time period. Arguably, his credibility analysis is lacking, as the ALJ spent the majority of his opinion detailing the assessments of Drs. Brownfield and Smith and explaining why he did not give them considerable weight. However, a review of the evidence reveals that the ALJ's failure to methodically list all of the factors

weighing against Plaintiff's credibility has no practical effect on the outcome of the case, as ample evidence exists in the record to support the ALJ's finding that Plaintiff is not totally credible.

As discussed above, the objective medical evidence does not support Plaintiff's complaints of disabling pain resulting from her impairments. And, although not pointed out by the ALJ, the fact that she reported significant improvement with steroid injections and medication discredited her complaints of disabling pain. *See Brown*, 390 F.3d at 540. The fact that she received only conservative treatment for her physical complaints was also a consideration weighing against her credibility. *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain). And, the fact that she reported the ability to watch television/ listen to the radio for up to 10 hours per day, getting up only "occasionally," calls into question her contention that she is unable to sit for long periods of time. Tr. 186, 217-239.

The lack of formal mental health treatment also distracts from her reports of severe panic attacks and depression. *See Kirby*, 500 F.3d at 709. And, the limited medical evidence concerning her mental impairments seems to suggest that the medication prescribed was helpful. Further, there is a contradiction between Plaintiff's testimony indicating that she can not deal with people anymore and other self reports that she shops in stores, gets along with authority figures, visits relatives, talks to neighbors, and goes out to eat or to the movies on at least a monthly basis.

Plaintiff takes issue with the ALJ consideration of her receipt of unemployment benefits. However, the Eighth Circuit has noted that "[a] claimant may admit an ability to work by applying for unemployment compensation benefits because such an applicant must hold himself out as available, willing and able to work." *Johnson v. Chater*, 108 F.3d 178, 180-181 (8th Cir. 1997); *Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991); *see also Barrett v. Shalala*, 38 F.3d 1019, 1024 (8th Cir. 1994). Applying for unemployment benefits "may be some evidence, though not conclusive, to negate" a claim of disability. *Jernigan*, 948 F.2d at 1074. Therefore, it was proper for the ALJ to consider this

15

in his evaluation. Accordingly, our review of the whole record reveals substantial evidence to support the ALJ's credibility determination. Although a more precise and thorough opinion is preferred, remanding this case merely to require the ALJ to set forth additional reasons and more thoroughly discuss the factors involved in his analysis would not change the outcome in this case. The record simply does not support Plaintiff's subjective complaints.

### D.    Hypothetical Question:

Lastly, Plaintiff asserts that the ALJ's hypothetical question failed to provide support for his determination that Plaintiff could still perform work that exists in significant numbers in the national economy. The point of a hypothetical question is to clearly present the vocational expert with a set of limitations that mirror those of the claimant. *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996). "In fashioning an appropriate hypothetical question for a vocational expert, the ALJ is required to include all the claimant's impairments supported by substantial evidence in the record as a whole." *Swope v. Barnhart*, 436 F.3d 1023, 1025 (8th Cir. 2006) (citing *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005)).

The hypothetical question posed by the ALJ in this case incorporated each of the physical and mental impairments that the ALJ found to be credible, and excluded those impairments that were discredited or that were not supported by the evidence presented. The hypothetical stated as follows:

> She can do work where complexity of tasks is learned and performed by rote, with few variables and little judgment required. Supervision required is simple direct and concrete. She can occasionally lift/carry 10 pounds and frequently less. She can sit for 6 hours and can stand/walk for 2 hours. She can occasionally climb, balance, crawl, kneel, stoop, and crouch. She can frequently finger and handle.

Tr. 269. The expert then responded that the individual could perform work as a small parts assembler, small production machine operator, and credit interviewer. Tr. 269.

In reviewing Plaintiff's Appeal Brief, we find her contention that the hypothetical was general in nature and that the vocational expert failed to answer the question is a misstatement of the record.

16

Hypothetical questions were submitted to the expert in writing, and the expert responded in a similar fashion. Having found that the limitations imposed by the ALJ were supported by the overall record, we also find that vocational experts responses to provide substantial evidence to support the ALJ's determination that Plaintiff was not disabled. *See Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (holding that vocational expert's testimony given in response to a properly phrased hypothetical question constitute substantial evidence).

### V.     Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits. We recommend that the decision be affirmed, and the Complaint dismissed with prejudice.

DATED this 2nd day of October 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)